UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY MURRAY,

        Plaintiff,

v.

        Case No.: 19-cr-13010
        Hon. Gershwin A. Drain

CITY OF WARREN, *et al.*,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL DISMISSAL [#22]**

### I.    INTRODUCTION

Plaintiff Gregory Murray filed the instant action raising claims stemming from his employment with the Defendant City of Warren as the City's first African American Diversity and Inclusion Coordinator. Specifically, Plaintiff brings claims under Title VII, 42 U.S.C. § 2000e-2(a), for race discrimination, retaliation and hostile work environment (Counts I through III), the Fourteenth Amendment's equal protection and due process clauses and a *Monell* claim brought pursuant to 42 U.S.C. § 1983 (Counts IV through VI), as well as a breach of contract claim (Count VII), a promissory estoppel claim (Count VIII), and disparate treatment, retaliation and hostile work environment claims under Michigan's Elliot Larsen

Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq.* (Counts IX through XI) against Defendant City and its Mayor, Defendant James Fouts.

Presently before the Court is the Defendants' Motion for Partial Dismissal, filed on March 20, 2020. Defendants argue that Counts I, and IV through IX should be dismissed because these claims fail as a matter of law. Plaintiff filed a Response in Opposition on April 10, 2020, and the Defendants filed a Reply in support of their present motion on April 20, 2020. A hearing on this matter was held on August 10, 2020. For the reasons that follow, the Court will grant in part and deny in part Defendants' Motion for Partial Dismissal.

## II.  FACTUAL BACKGROUND

Plaintiff was hired by Defendant Fouts to work as the City's Diversity and Inclusion Coordinator on January 6, 2017. ECF No. 16, PageID.138. Plaintiff alleges that the City "has a notorious history of racially discriminatory practices, customs, and policies against African Americans." *Id*. Because of this, Plaintiff's employment objective was to institute diversity and inclusion training throughout the Defendant City, including for the police, fire and other City Departments. *Id*. at PageID.139. Plaintiff was further tasked with examining past and current customs, practices and policies of unlawful racial, gender, and other discrimination and to develop training and policy that would promote diversity within the Defendant City and its departments. *Id*. at PageID.139-40. Additionally, Plaintiff

was to provide assistance with investigating claims of inappropriate, improper or illegal activities that could impair diversity and inclusion in the City's Departments. *Id.* at PageID.140.

Plaintiff alleges that the Defendants thwarted his ability to perform his job duties. *Id.* For instance, Plaintiff asserts various incidents occurred during his employment and that Plaintiff was ignored and retaliated against for raising his concerns. *Id.* One of the incidents occurred early in Plaintiff's employment with the City when he introduced himself to the police chief. *Id.* at PageID.139. Thereafter, while discussing his introduction to Plaintiff with a deputy sheriff, the police chief stated, "I told that nigger to stay out of my house." *Id.*

Another incident involved City police officer Barbara Beyer admitting to using the racially derogatory word, "nigger," to refer to, and in the presence of Officer Desheila Howlett, and receiving no discipline until weeks afterwards. *Id.* Plaintiff recommended that Beyer be terminated, however his recommendation was rejected by Defendant Fouts, who decided to give Beyer a two-week, unpaid suspension that was imposed only after she received her annual longevity bonus check. *Id.* at PageID.141.

Another incident involved City employee Shawn Johnson's repeated use of racial slurs—including telling an African American co-worker—that she looked like the image on the gorilla glue bottle. *Id.* Plaintiff again recommended

3

termination and Defendant Fouts again rejected this recommendation. *Id*. Plaintiff alleges that Johnson's racial discrimination and animus were swept under the rug and nearly a year and a half after the incident, Johnson attended a one-day diversity training with Plaintiff. *Id.*

In September of 2017, Plaintiff received a complaint from the former Director of the Michigan Department of Deaf, Blind, and Hard of Hearing, alleging that Warren police officers violated federal and state civil rights laws by denying African American residents access to an interpreter, as required by law. *Id*. at PageID.141-42. Plaintiff conducted an investigation and reported that violations had occurred to Defendant Fouts, the police chief, and the City Attorney. *Id.* Defendant Fouts demanded that Plaintiff cease any further engagement with the Warren police officers relative to his investigation, thus Plaintiff was effectively prevented from performing his job duties to investigate civil rights violations. *Id*. at PageID.142.

In early 2017, Plaintiff became aware that a City fire department official referred to firefighter Jose Suarez as the station's "house nigger." *Id*. Plaintiff again recommended termination, but Defendant Fouts rejected Plaintiff's suggestion. *Id.* Later, in August of 2017, the Equal Employment Opportunity Commission came to the City and conducted a training. *Id*. at PageID.142-43. During the training, Defendant Fouts mocked a person with disabilities in front of

his executive staff. *Id.* at PageID.143. Plaintiff confronted Defendant Fouts after the training, and Fouts prohibited Plaintiff from conducting any further trainings in retaliation. *Id.* Defendant Fouts also thwarted Plaintiff's efforts to form a diversity commission to address illegal and discriminatory practices in the City. *Id.*

In fact, when Plaintiff reported unlawful incidents of discrimination, Defendant Fouts told Plaintiff to ignore it until after the upcoming election because City voters may vote Fouts out of office if he allowed Plaintiff to address unlawful discrimination. *Id.* at PageID.143-44. Plaintiff claims that he was unlawfully terminated or constructively discharged.

### III. LAW & ANALYSIS

#### A. Standard of Review

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is reviewed under the same standard as a motion brought pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See Grindstaff* v. *Green*, 133 F. 3d 416, 421 (6th Cir. 1998). Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon

5

which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

6

misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 1950.

The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001). Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.*

### B. Race Discrimination (Counts I and IX)

As an initial matter, the Court notes that Defendants rely on Plaintiff's purported resignation letter in support of their arguments. This documents is not referenced in the First Amended Complaint, nor is it a matter of public record or appropriate for judicial notice. *See* ECF 12-3. The Court will not rely on this document in its analysis.

In order to establish race discrimination under Title VII and Michigan's ELCRA, a plaintiff can produce evidence of either direct or circumstantial evidence of disparate treatment. *See DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004); *see also Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004)

7

("Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases.").

If direct evidence of discrimination is absent, the Court must analyze the claim under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If a plaintiff bases his race discrimination claim on circumstantial evidence than he must demonstrate that: (1) he is a member of a protected class, (2) he was qualified for the job at issue, (3) was subjected to an adverse employment action, and (4) was treated differently than a similarly situated nonprotected person. *Id*. at 802.

Where a plaintiff presents direct evidence of discrimination, the *McDonnell-Douglas* framework does not apply, and Plaintiff can proceed directly to trial on the claim. *TWA v. Thurston*, 469 U.S. 111, 121 (1985) ("The *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."); *Downey v. Charlevoix Cty. Bd. of Rd. Comm'rs,* 227 Mich. App. 621; 576 N.W.2d 712 (Mich. Ct. App. 1998).

Defendants argue that Plaintiff has not alleged the third and fourth elements of a disparate treatment claim because Plaintiff does not allege any acts of discrimination that were directed personally at him, and his position was filled by an African American male.

Contrary to Defendants' argument, Plaintiff has alleged an adverse employment action because he was purportedly terminated and/or constructively discharged. Defendant's attempt to characterize Plaintiff's departure as a resignation and cite to extraneous evidence is improper at the Rule 12(c) stage.

Plaintiff also claims similarly situated employees who are not in a protected class were treated more favorably than he was where his efforts to perform his job duties were thwarted forcing his resignation while his counterparts were able to retain their positions even after engaging in illegal discrimination, which had been reported to Defendants. Additionally, Defendant City's police commissioner allegedly called Plaintiff a racial slur and prevented Plaintiff, with Defendant Fouts' full support, from investigating past incidents of racial discrimination and civil rights violations within the police department.

Accordingly, Plaintiff has stated a viable race discrimination claim under both Title VII and the ELCRA.

### C. Equal Protection (Count IV)

The Fourteenth Amendment sets forth the requirement that no governmental actor or unit shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "Proof of racially discriminatory intent is required to show an Equal Protection Clause violation." *City of Cuyahoga Falls v. Buckeye Community Hope Foundation*, 538 U.S. 188, 191 (2003). The evidence

9

relied upon may be direct or circumstantial, as long as it demonstrates "a clear pattern" of governmental action that is "unexplainable on grounds other than race." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 256 (1977).

Defendants surmise that Plaintiff is bringing his equal protection claim under a "class of one" theory. Plaintiff denies he is proceeding under this theory and reasserts that he has sufficiently alleged direct discrimination. Similar to his VII and ELCRA discrimination claims, because Plaintiff has alleged direct evidence of discrimination, a *prima facie* case of discrimination in violation of the equal protection clause can be established under *McDonnell Douglas*. *Lautermich v. Findlay City Sch.*, 314 F.3d 271, 275 (6th Cir. 2003). As discussed *supra*, Plaintiff has alleged he is African American, that he was subject to adverse employment action, that he was qualified for the position, and that he was treated differently than similarly situated members of the unprotected class. Plaintiff has therefore stated a viable equal protection claim.

### D. Due Process (Count V)

Defendants first argue that Plaintiff's substantive due process claim must be dismissed because it is virtually indistinguishable from Plaintiff's equal protection claim. The Supreme Court has held that "[w]here a particular Amendment provides an explicit source of constitutional protection against a particular sort of

government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Jon Jon's Inc. v. City of Warren*, 162 F. Supp.3d 592, 605 (E.D. Mich. 2016) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

Alternatively, Defendants argue this claim also fails because Plaintiff fails to allege a constitutionally protected liberty or property interest nor a fundamental right. Defendants maintain that Plaintiff has no property interest in at-will employment. *See Kizer v. Shelby Cty. Gov't*, 649 F.3d 462, 466 (6th Cir. 2011) (holding that only public employees not subject to removal at will "have a state-law created, constitutionally protected property interest in maintaining their current employment."); *see also Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989); *Cremeans v. City of Roseville*, 861 F.2d 878, 880 (6th Cir. 1988).

Based on the foregoing considerations, Plaintiff has not stated a viable substantive due process claim and Count V will be dismissed.

### E. *Monell* Liability (Count VI)

To allege a 42 U.S.C. § 1983 claim against the City, plaintiff must allege that "(1) agents of the municipality, while acting under color of state law, (2) violated the plaintiff's constitutional rights, and (3) that a municipal policy or policy of inaction was the moving force behind the violation." *Memphis, Tenn.*

*Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).

The elements of an "inaction" theory of recovery include: existence of a clear and persistent pattern of inaction that violates § 1983 by employees; (2) notice or constructive notice on the part of the governmental entity; (3) tacit approval or deliberate indifference to violations that have the effect of establishing an official policy of inaction; and (4) evidence that the policy of inaction was the "moving force" with a direct causal link to [the plaintiff's] constitutional deprivation. *Doe v. Clairborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)).

Here, Plaintiff has alleged that Defendants were acting under color of law when they violated his equal protection rights. Plaintiff has alleged that the City has a long history of racial discrimination and civil rights violations. The First Amended Complaint describes a City culture that cultivated the use of racially offensive, insulting and demeaning statements and encouraged such behavior by failing to discipline those engaged in the conduct. Plaintiff alleges that the highest ranking official in the City knew about these racially offensive, insulting and demeaning comments and that the City's police commissioner was aware of civil rights violations occurring within the department and both failed to take any action. Additionally, Defendant Fouts instructed Plaintiff to put diversity training on the

back burner until after the election believing his constituents would not vote for him if he supported diversity training among City employees.

Based on the foregoing considerations, Plaintiff has alleged a viable § 1983 *Monell* claim against the Defendant City.

### F. Breach of Contract (Count VII)

"A party asserting a breach of contract must [allege] (1) there was a contract, (2) which the other party breached, (3) thereby resulting in injury to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 178; 848 N.W.2d 95 (2014).

Defendant argues that Plaintiff fails to allege that any terms or conditions in his Employment Contract were breached. Relying on his job description, Plaintiff counters that he was hired for the purpose of developing, implementing and monitoring programs for diversity and inclusion within the Defendant City, including in the police and fire departments. Plaintiff also alleges that his ability to effectively carry out his job objectives was thwarted by the Defendants' breach of this agreement, including Defendant Fouts,' who explicitly told Plaintiff not to do his job until after the election.

Here, Plaintiff fails to articulate a term of his Employment Contract that was breached. Rather, he refers to his job description form. This is insufficient to state a breach of contract claim. This claim is dismissed.

13

### G. Promissory Estoppel (Count VIII)

To allege a claim for promissory estoppel, a plaintiff must include the following: "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promise, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Bodnar v. St. John Providence, Inc.*, 327 Mich. App. 203, 226-27; 933 N.W.2d 363 (2019).

Defendant argues that Plaintiff has not stated a claim for promissory estoppel because Plaintiff's allegations acknowledge he was hired for, and filled the position of, Diversity Coordinator for the Defendant City. Plaintiff counters that Defendants promised him that he would be able to address the City's institutional and systemic racism problems particularly within the police and fire departments. In accepting the position, Plaintiff reasonably and justifiably relied on these promises. However, Defendants breached their promises by precluding the Plaintiff from implementing diversity training, investigating civil rights violations and otherwise perform his job duties.

Based on the foregoing, Plaintiff has sufficiently alleged a viable promissory estoppel claim.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, Defendants' Motion for Partial Dismissal [#22] is GRANTED IN PART and DENIED IN PART.

Count V (substantive due process) and Count VII (breach of contract) are DISMISSED.

SO ORDERED.

Dated: August 19, 2020 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 19, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager